**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUDITH GOLDMAN and | : | |
| KENNETH B. GOLDMAN | : | |
| Plaintiffs, | : | |
| v. | : | CASE NO: 2:12-cv-04469 AB |
| | : | |
| CITIGROUP GLOBAL MARKETS INC., | : | |
| BARRY GUARIGLIA, | : | |
| FINRA, | : | |
| FREDERICK PIERONI | : | |
| Defendants | : | |

**PLAINTIFFS' COMBINED ANSWER IN OPPOSITION TO DEFENDANTS FINRA
AND PIERONI'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (DKT AT 12
FILED 10/9/12) AND CITIGROUP GLOBAL MARKETS INC., AND BARRY
GUARIGLIA'S MOTION TO DISMISS (DKT AT 11 FILED 10/9/12)**

**1.    PROCEDURAL POSTURE**:

It is important to note that the FINRA arbitrators are not defendants in this case. The

FINRA Defendant named in the caption is the Financial Industry Regulatory Authority, a

national organization sponsored by the financial industry. FINRA issues rules and regulations

approved by the Securities & Exchange Commission ("SEC") in the self-regulated securities

industry.  FINRA is both regulator and administrator; licensing member firms such as Merrill

Lynch, Citigroup, JP Morgan for example, and FINRA associated persons such as stockbroker

Barry Guariglia ("Guariglia").

FINRA mandates that its members arbitrate claims from consumers in the FINRA

arbitration forum. Under FINRA arbitration contracts, FINRA incorporates the FINRA

arbitration and mediation rules. Once a complaint is submitted to FINRA, FINRA appoints

FINRA arbitrators and/or mediators to decide complaints filed by outsiders such as Plaintiffs

against FINRA's member firms and stockbrokers.

Judith and Kenneth Goldman ("Plaintiffs" or "Claimants")'s Complaint (Dkt. No. 1, 8/7/12), and original request for a temporary restraining order ("TRO") (Dkt. No. 2, 8/7/12), and Second Motion for TRO (Dkt. No. 6, 8/20/12) stem from Defendants' breach of the FINRA arbitration contract by FINRA, CGMI, and stockbroker Guariglia, and separately, CGMI and FINRA Mediator Pieroni ("Pieroni" or "Mediator")'s breach of the FINRA mediation contract.

Importantly, there is a major difference in timing and occurrences since Plaintiffs' filed their Complaint, the original TRO (denied by emergency judge, the Honorable Paul S. Diamond by Order dated 8/7/12, Dkt. No. 3), and Second Motion for TRO, (denied by presiding judge the Honorable Anita B. Brody by Order dated 8/21/12, Dkt. No. 8).

Since this Court's 8/21/12 Order, the FINRA Arbitration Panel has conducted a day of hearings in Philadelphia on 8/22/12. Thus, where this Court denied Plaintiffs' second request for a temporary restraining order because the Court did not have jurisdiction over the matter at that time, now that a hearing and orders have been issued in this district, arguably this Court now has jurisdiction. [1]

Turning to the motions to dismiss, because the same contracts, facts, and law serve as the basis for Plaintiffs' Complaint, and Defendants' motions to dismiss, Plaintiffs provide this combined response to FINRA and Mediator Pieroni's motion to dismiss under Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief can be granted), and CGMI and Guariglia's motion to dismiss under Fed. R. Civ. P. 12(b)(1)(lack of subject-matter jurisdiction).

2.    **BACKGROUND**:

Plaintiffs filed this Complaint and two requests for injunctive relief long after Plaintiffs' claims had been submitted to FINRA arbitration in August 2010. In the FINRA arbitration,

---

[1] The August hearings have been adjourned until April 16, 2013.

Plaintiffs alleged securities fraud and other violations of law and rules seeking damages in excess of $900,000 against Merrill Lynch (non-party in this Complaint), CGMI (and its various predecessors, Morgan Stanley, Smith Barney, Citigroup), and Guariglia.

The prehearing arbitration proceedings were marked by a contentious discovery process where Merrill Lynch, CGMI, and Guariglia refused to produce to Plaintiffs the discovery mandated under FINRA discovery rules, particularly emails, which are incorporated into FINRA arbitration contracts:

> ***This Discovery Guide and Document Production Lists supplement the discovery rules contained in NASD Code of Arbitration Procedure for Customer Disputes ("NASD Customer Code.") (See Rules 12505-12511.)*** ... DOCUMENTS TO BE PRODUCED IN ALL CUSTOMER CASES [BY] FIRM [AND]ASSOCIATED PERSON(S) ... All correspondence between the customer and the firm/Associated Person(s) relating to the transaction(s) at issue ... All notes ... entries in any diary or calendar, relating to the customer's account(s) at issue. ... recordings and notes of telephone calls or conversations about the customer's account(s) ... between the Associated Person(s) and the customer (and any person purporting to act on behalf of the customer), and/or between the firm and the Associated Person(s). ... supervisors, any bulletins (or similar notices) issued by the compliance department ... All records of the firm/Associated Person(s) relating to the customer's account(s) at issue, such as, but not limited to, internal reviews and exception and activity reports which reference the customer's account(s) at issue ... alleged improper behavior in the branch against other individuals similar to the improper conduct alleged in the statement of claim.

*See* FINRA DISCOVERY GUIDE (emphasis added). [2]

The arbitration proceedings were supposed to be conducted as "Expedited Proceedings" in order to resolve claims by which Guariglia and MorganStanley/SmithBarney/Citigroup, now known as CGMI consumed the Goldmans' retirement savings through securities fraud. In order to avoid discovery, Merrill Lynch offered to mediate after its produced voluminous emails, and to avoid further discovery. CGMI and Guariglia were obviously seeking to avoid email

---

[2] *See* http://www.finra.org/ArbitrationAndMediation/Arbitrators/CaseGuidanceResources/DiscoveryGuide.

production altogether. With the agreement to mediate, discovery and arbitration were adjourned before CGMI or Guariglia produced any emails and frankly any substantive discovery.

Plaintiffs desire to mediate was based on the fact that Judith and Kenneth Goldman approach 80 years old, and Mr. Goldman is in poor health. Thus, the mediation commenced in October 2011 at the New York offices of attorneys for Merrill Lynch. To its great credit, Merrill Lynch mediated in good faith and an amicable settlement of Plaintiffs claims against Merrill Lynch was concluded. However, at the very commencement of that mediation, which was supposed to include CGMI, CGMI proclaimed before all parties present, including the Mediator, that CGMI would not mediate under any conditions whatsoever despite signing the FINRA mediation contract.

With that declaration, Plaintiffs demanded that CGMI leave the mediation so that CGMI would not benefit from the highly confidential communications and negotiations about to occur between Plaintiffs, Merrill Lynch, and  the supposedly neutral and confidential Mediator Pieroni. The attorney for CGMI apparently left the offices but returned unbeknownst to Plaintiffs and sat in on the confidential mediation with Merrill Lynch. *See* **EXHIBIT 1** ("Claimants' Motion to Bar Greenberg Traurig from Further Representing CGMI and Guariglia in these Proceedings, and Motion to File an Amended Statement of Claims" filed with the FINRA Panel 12/15/11).

This underhanded conduct is not only unethical, it is a flagrant breach of the FINRA mediation contract, and arbitration contract between FINRA, CGMI, Guariglia, Pieroni, and the Goldmans. *See* **EXHIBIT 2** (Mediation Contract); *see also*, FINRA Mediation Rule 14109 (f) ("The parties agree to attempt, in good faith, to negotiate a settlement of the matter submitted to mediation." … (g) Mediation is intended to be private and confidential"); *and see id.,* "Benefits

of Mediation" ("Mediation offers greater confidentiality than arbitration" citing FINRA Code of Mediation Rule 14109 (g)(1)):

> Mediation is intended to be private and confidential. … The parties and the mediator agree not to disclose, transmit, introduce, or otherwise use opinions, suggestions, proposals, offers, or admissions obtained or disclosed during the mediation by any party or the mediator as evidence in any action at law, or other proceeding, including a lawsuit or arbitration, unless authorized in writing by all other parties to the mediation or compelled by law, except that the fact that a mediation has occurred shall not be considered confidential.

www.finra.org/ArbitrationMediation/Parties/Overview/MediationAnAlternatePath.

At the conclusion of the mediation, CGMI's arrogant attorney, New York lawyer George Sullivan, reappeared in the presence of all parties, including the Mediator, threatening Plaintiffs with litigation if Plaintiffs dared to reconvene the arbitration. Plaintiffs of course reconvened the arbitration and immediately filed "Claimants' Motion to Bar Greenberg Traurig from Further Representing CGMI and Guariglia in these Proceedings. *See* **EXHIBIT 1**.

In response to Plaintiffs' Motion, CGMI submitted the following false statement to the arbitrators, which included by attachment, the false affidavit CGMI procured from Mediator Pieroni who dared to submit that affidavit to a FINRA Arbitration Panel and its Chairman with whom Pieroni shared an undisclosed relationship:

> CGMI respects the confidentiality of the mediation process and accordingly does not believe it is appropriate to disclose the substantive content of communications that took place throughout the course of the day on October 14, 201[1]. However, it is imperative that this Panel know that, contrary to the allegations in Claimants' motions, at no time during the course of the mediation did CGMI express or imply a refusal to mediate. Rather, it participated in the mediation in good faith, but unfortunately could not resolve the matter with Claimants. Further, at no time did anyone request that CGMI leave the mediation, nor did CGMI refuse such a request.

*See* **EXHIBIT 3** (CGMI and Guariglia response to Claimants Motion to Bar).

Proof CGMI's statements and the Mediator's affidavit are entirely false is the fact that Claimants demanded that the Mediator identify every offer and communication between

Claimants and CGMI at the mediation. *See* **EXHIBIT 4** ("Claimants' Response to CGMI's January 5, 2012 Answer to Claimants' Motion to Bar Greenberg Traurig[.]") [3]

Of course, there were none: CGMI made no offers, engaged in no direct or indirect communications with Claimants, did not come with any authority or intentions to mediate, and offered absolutely nothing whatsoever to Claimants. Therefore, CGMI deliberately refused to mediate in accordance with FINRA rules and the contract it signed promising to mediate. *See* **EXHIBIT 2**.

While the Mediator not only breached the contract, he committed perjury through false affidavit. Moreover, by colluding with CGMI to violate the mediation contract and engage in prohibited contact with the arbitrators, CGMI and the Mediator deliberately and maliciously tainted the entire Panel.

This breach of ethics and contract was reported to FINRA's hierarchy, the SEC, and the Consumer Financial Protection Bureau along with Plaintiffs' demand that the Panel resign and that FINRA appoint a new Panel. *See* **EXHIBIT 5** ("Claimants' March 5, 2012 letter to FINRA re Formal Objection to Proceedings); **EXHIBIT 6** (Claimants' "April 29, 2012 letter to FINRA re: Final Demand for New FINRA Arbitration Panel"); **EXHIBIT 7** (Claimants' "May 14, 2012 Letter to FINRA") and **EXHIBIT 8** (Claimants' "May 16, 2012 Letter to FINRA"). [4]

FINRA rejected Plaintiffs' demands. Thus, FINRA stands in breach of its contractual obligation to provide Plaintiffs impartial arbitrators free from taint and contact from a Mediator advocating on behalf of a FINRA Member Firm, let alone a mediator who falsely advocates and contacts a Panel Chair with whom he shared an undisclosed relationship.

---

[3] This exhibit best exemplifies the flagrant abuse suffered by Claimants.
[4] The complete list of officials to whom these violations were reported in EXHIBITS 5 – 8 includes: Mary L. Schapiro Securities & Exchange Commission, Richard Cordray Consumer Financial Protection Bureau, FINRA Directors Kenneth Andrichik, Julie Crotty, Todd Saltzman, and Patricia Williams, as well as FINRA Counsel, Mignon McLemore, Esquire, and FINRA Mediation Director Edward Sihaga.

As these communications and orders by the Panel show, Defendants breached the mediation contracts and the arbitration contract by refusing to provide Plaintiffs the discovery that was withheld pending mediation. Thus, FINRA, and the FINRA Panel, as well as CGMI, and Guariglia have flagrantly denied Claimants the benefit of the bargain purchased with Claimants' payment of FINRA arbitration and mediation fees. These breaches of Plaintiffs' mediation contract and arbitration contract rights are not mere interlocutory orders as Defendants protest, the deliberate false affidavit and taint of arbitrators, and abject denial of discovery, when combined with the direct denials of Plaintiffs' contract rights by FINRA's hierarchy have entirely destroyed Plaintiffs' contract rights and ability to prove clandestine securities fraud.

Such blatant breach and collusion in any other contract setting constitutes repudiation for which Plaintiffs are entitled to quit performance and sue for damages. Yet, in this setting, Defendants argue that Plaintiffs cannot quit performance lest it suffer default because the abuse is merely "interlocutory" and not final. Defendants therefore insist that the only avenue available for any party in a FINRA arbitration is continuance through arbitration until the final and obviously predetermined arbitration award is rendered; thereafter Plaintiffs may seek vacatur under the nearly impossible standard required to vacate an arbitration award, instead of the preponderance standard by which Plaintiffs would almost certainly prevail in this case for breach of contracts.

That the Panel has refused to allow a stenographic record of the hearings set to reconvene in April 2013, and refuse to write an explained decision, appears deliberate actions to suppress Plaintiffs' ability to present a record upon which this Court may vacate an arbitration award. *See Murray Popkave v. John Hancock Distributors*, 768 F. Supp. 2d 785, 793 (E.D. Pa. 2011)

("When arbitrators do not state their reasons for an award, 'it is nearly impossible for the court to determine whether they acted in disregard of the law.'")

3.      **QUESTION PRESENTED**: Does this Court now have jurisdiction to decide Plaintiffs' breach of contract claims where Defendants' conduct and the rulings rendered by FINRA and the FINRA Panel in this district have effectively destroyed Plaintiffs' contract rights?

4.      **ANSWER**:  Yes. Although the complaint was filed before any hearing actually took place in this district, with the August 22, 2012 hearing and orders issued thereafter, this Court now has jurisdiction to decide Plaintiffs' breach of contract claims, and therefore deny Defendants' motions to dismiss for lack of jurisdiction or failure to state a claim.

5.      **ARGUMENT**

   a.      **LEGAL STANDARD**

Under *Ashcroft v. Iqbal* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." 556 U.S. 662, 678 (2009). Accordingly, a showing of entitlement for relief is necessary to survive a motion to dismiss. *Id.,* ("[Fed. R. Civ. P.] Rule 8 'requires a showing, rather than a blanket assertion, of entitlement to relief.'"). Rule 8 requires no heightened pleading standard, only a factual showing which must be accepted as true. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-233 (3d Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). Thus, "a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. at 679.

Defendants FINRA and Pieroni move for dismissal under Fed. R. Civ. P. 12(b)(6). In a 12(b)(6) motion, both the appellate court and the district court exercise the same standard. *See Glover v. FDIC*, 2012 U.S. App. LEXIS 18628 at **8-9 (3d Cir. 2012) ("We exercise plenary

review over a district court's dismissal for failure to state a claim under Rule 12(b)(6) applying the same standard as the district court. ... We must accept all well-pled allegations in the complaint as true and ask whether, under any reasonable interpretation, the plaintiff states a claim that would entitle her to relief.")

Defendants CGMI and Guariglia move to dismiss under Fed. R. Civ. P. 12(b)(1) ("standing challenge may attack the complaint facially or may attack the factual basis for standing. *Askew v. Gen. Assembly of the Church of the Lord Jesus*, 684 F.3d 413, 415 (3d Cir. 2012) citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977).

## 1.   PLAINTIFFS' RESPONSE TO FINRA AND PIERONI MOTION TO DISMISS UNDER 12(b)(6)

Plaintiffs incorporate by reference the foregoing with the following addition:

In accordance with rulings on motions to dismiss, the court "must accept all well-pled allegations in the complaint as true and ask whether, under any reasonable interpretation, the plaintiff states a claim that would entitle her to relief.") *Glover v. FDIC*, 2012 U.S. App. LEXIS 18628 at **8-9.

Pleadings for breach of contract are governed by Rule 8 which merely requires "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support ..., short and plain statement of the claim showing that the pleader is entitled to relief; and ... a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. Rule 8.

Plaintiffs Complaint states the minimum " short and plain statement" for the court's jurisdiction and showing that the pleader is entitled to relief as well as "a demand for the relief sought".  *See* Dkt. No. 1 at ¶¶ 7-18 ("Jurisdiction"); *see also, id.*  at ¶¶ 19-79 (Facts and Claim); *and see id.* "Damages" ("Plaintiffs demand compensatory, consequential, and incidental

damages in an amount to be established at trial including attorney fees and costs. In addition, Plaintiffs seek injunctive relief by separate motion.") Accordingly, Defendants' individual and collective motions for relief should be denied because pleading requirements have been satisfied, and also for the following reasons:

First, FINRA and Pieroni incompletely state "this Court has subject matter jurisdiction over Plaintiffs' Complaint based on 28 U.S.C. § 1331 and 15 U.S.C. § 78aa" suggesting that jurisdiction does not exist otherwise. *See* Dkt. No. 12, 10/9/12 ("Motion of Defendants FINRA and Pieroni to Dismiss Plaintiffs' Complaint"). Under the "Jurisdiction" section and in the accompanying footnote, FINRA and Pieroni argue, "Plaintiffs allege that the Federal Arbitration Act supplies the Court with subject matter jurisdiction. Compl. ¶¶ 8-10. As the Court noted in its August 21, 2012 Order, the FAA does not provide litigants with an independent basis for jurisdiction." However, Plaintiffs' complaint specifically notes, this case "implicates federal law that is apparent from the face ... and ... federal statutes *[although] the matter need not be strictly statutory; federal common law will suffice*" *See* Plaintiffs' Complaint citing *National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 850, (1985) (emphasis added) ¶¶ 15-16.

Plaintiffs also note that this Court has jurisdiction "under 28 U.S.C. § 2201(a) Creation of remedy ('In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'") *Id.* ¶ 17; *see also* 28 U.S.C. § 2202 "Further relief" ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.") *Id.*

Thus, Plaintiffs do not exclusively seek jurisdiction based on "FINRA rules, policies, practices, and interpretations ... [under] 15 U.S.C. § 78aa" as FINRA and Pieroni argue. Jurisdiction also exists under federal common law. *National Farmers Union,* 471 U.S. 845, 850:

> Section 1331 of the Judicial Code provides that a federal district court 'shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.' It is well settled that this statutory grant of 'jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.' Federal common law as articulated in rules that are fashioned by court decisions are "laws" as that term is used in § 1331.")

Applying federal common law, the Supreme Court noted in *Granite Rock Company, v. International Brotherhood of Teamsters et al.,* that whether parties have agreed to arbitrate a particular dispute is typically an "issue for judicial determination." 130 S. Ct. 2847 (2010).

Plaintiffs admittedly agreed to arbitrate claims for securities fraud; however, Plaintiffs **did not agree** to arbitrate the disputes brought in this Court, namely the preemptive and utter destruction of Plaintiffs' arbitration and mediation contract rights by FINRA, the FINRA arbitration panel, FINRA Mediator, CGMI, and Guariglia. Accordingly, and as the Supreme Court directs in *Granite Rock*, "[I]t is necessary to apply the rule that a court may order arbitration of a particular dispute only when satisfied that the parties agreed to arbitrate that dispute." *Id.* 130 S. Ct. 2847, 2850.

To that extent, and considering that Defendants argue that Plaintiffs' claims that FINRA is immune or that every claim Plaintiffs may have must be arbitrated, it is for the Court to decide whether the breaches of contract alleged in this case are arbitrable under a specific arbitration clause that Defendants have yet to point out; Defendants cannot simply argue that because Plaintiffs securities fraud claims are arbitrable that the breach of the arbitration and mediation contract under the extreme circumstances cited here must be included in that arbitration:

> To satisfy itself that such [an arbitration] agreement exists, the court must resolve any issue that calls into question the specific arbitration clause that a party seeks to have the court enforce. See, e.g., Rent-A-Center, West, Inc. v. Jackson, ante, at ___ - ___, 130 S. Ct. 2772, 177 L. Ed. 2d 403. Absent an agreement committing them to an arbitrator, such issues typically concern the scope and enforceability of the parties' arbitration clause. In addition, such issues always include whether the clause was agreed to, and may include when that agreement was formed. Pp. ___ - ___, 177 L. Ed. 2d, at 576-577.

*Granite Rock,* 130 S. Ct. 2847, 1250.

The Supreme Court "has never held that the presumption [in favor of arbitration] overrides the principle that a court may submit to arbitration 'only those disputes . . . the parties have agreed to submit,' ... nor that courts may use policy considerations as a substitute for party agreement." *Id.* at 1251. Hence, Defendants motion to dismiss should not be granted but instead should be denied or at the very least declared premature. *Id.,* at 1250 citing *AT&T Techs. v. Communs. Workers*, 475 U.S., at 650-651 ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contract parties"). Nor can "policy considerations substitute for party agreements. *See Granite Rock,* 130 S. Ct. 2847, 1251 citing *First Options v. Kaplan*, 514 U.S. 938, 943 (1995).

Thus, this Court should deny the motions to dismiss by carefully considering any presumption favoring arbitration "only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended." *See Granite Rock* 130 S. Ct. 2847, 1259-1260 (reversing Court of Appeals' judgment because "it requires judicial resolution of two questions central to [ ] arbitration demand: when the [collective bargaining agreement] was formed, and whether its arbitration clause covers the matters [the union] wishes to arbitrate").

It is well settled in commercial and labor cases that whether parties agreed to "submi[t] a particular dispute to arbitration" is typically a matter "for judicial determination." *Granite Rock*

130 S. Ct. at 2856 citing *First Options,* 514 U.S. 938, 944 (1995) (when deciding whether the parties agreed to arbitrate a certain matter "courts generally ... should apply ordinary ... principles that govern the formation of contracts").

Plaintiffs therefore seek judicial consideration under "ordinary principles that govern the formation of contracts" and the standard by which this Court must decide motions to dismiss. *See id.,* Fed. R. Civ. P. Rule 8, ("short and plain statement" standard); *see also*, *Glover*, *supra*, (court "must accept all well-pled allegations in the complaint as true and ask whether, under any reasonable interpretation, the plaintiff states a claim that would entitle her to relief.")

Plaintiffs seek that judicial consideration under *Granite Rock* based on the extreme conditions present in this case; the unconscionable abuse inflicted on outsider Plaintiffs in the incestuous FINRA forum perfectly created by the securities industry to sit as judge and jury over consumer's suits against FINRA members in order to protect members. The entire FINRA organization has been exhaustively informed of the abusive conduct and breach of contracts but to no avail. *See* **EXHIBITS 1 - 8**. All administrative remedies have therefore been exhausted, if any such requirement even exists, and despite conduct no court would tolerate, predictably it is all perfectly acceptable to FINRA.

With direct rulings by FINRA destroying Plaintiffs' arbitration and mediation contract rights, the breach of contract and conduct presented to this Court are worthy of judicial determination under existing law or an extension of that law under *Granite Rock*. Otherwise, Plaintiffs will be unjustly forced to continue performing under contracts wholly disregarded by Defendants. In any other forum, the Panel, the mediator, the colluding company, and its lawyers would be soundly sanctioned and arbitrators made to step down; it should be no different here as Defendants' conduct is not be above the law.

Thus, Plaintiffs should be allowed to declare the arbitration contract terminated and prosecute its breach of contract claims now instead of being forced to endure an extremely abusive and costly process, and the inevitable award in favor of FINRA members firm CGMI. *See e.g., Hage v. Unumprovident Corp.,* 2008 U.S. Dist. LEXIS 104638 at **32-33 (D.N.J. 2008) (unpublished decision) citing *Mobley v. New York Life,* 295 U.S. 632, 638-639 (1935):

> New Jersey courts have shown a willingness to consider federal common law decisions in th[e insurance context] ... that the insurer committed an anticipatory breach of disability policies[. And in that context] ... The Supreme Court ... provided the following definition of anticipatory breach:
>> Repudiation by one party, to be sufficient in any case to entitle the other to treat the contract as absolutely and finally broken and to recover damages as upon total breach, must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation.

The extreme conduct in this case establishes "Repudiation by [the] parti[es ]sufficient in any case to entitle the other to treat the contract as absolutely and finally broken and to recover damages as upon total breach[.]" *Id.* Moreover, that FINRA as an organization, the FINRA Panel, CGMI, and Guariglia  refuse to allow Plaintiffs any emails or internal communications appears collusive, corrupt, and for no good reason other than to protect FINRA Member CGMI and Guariglia from fraud; hence, proof positive of the Panel's corruption if not evident partiality:

> Title 9 U.S.C. § 10(a) (2000 ed., Supp. V) provides in part: "In any of the following cases ***the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration***-- "(1) where the award was procured by corruption, fraud, or undue means; "***(2) where there was evident partiality or corruption in the arbitrators, or either of them;*** "(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or "(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

*Hall Street v. Mattel,* 552 U.S. 576, 582 fn 4 (2008) (Emphasis added.)

There are simply no grounds or justification for denying any party to arbitration this fundamental discovery, particularly when the FINRA rules mandate it. Moreover, whenever arbitrators are tainted, as this panel has been tainted, the affected party deserves a new panel.

These abject breaches of contract and due process have been ruthlessly carried out by the FINRA organization, the FINRA Panel, Pieroni, CGMI, and Guariglia. The conduct is so egregious that this Court must intervene to decide if Plaintiffs' contract rights have been decimated to the point of "Repudiation ... sufficient in any case to entitle the other [i.e., Plaintiffs] to treat the contract as absolutely and finally broken" the arbitration contract terminated. *Hage*, supra, citing *Mobley*, 295 U.S. 632, 639.

Under *Hage* and the recent Supreme Court decision in *Granite Rock* a federal common-law claim for breach of contract is recognized. *Granite Rock*, 130 S. Ct. at 2855. Hence, Defendants cannot simply argue that arbitration is a black hole into which all conduct and rights tangential to arbitration must fall however egregious. *Id.*, at 1259 citing *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650-651 ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contract parties ... Nor have we held that courts may use policy considerations as a substitute for party agreement." citing *AT&T Techs.* at 648-651)

Accordingly, although there is a strong national policy favoring arbitration, like all policies there are limitations and common law rights recognizing limits to policy. *Khan v. Dell Inc.*, 669 F.3d 350 (3d Cir. 2012) ("[Federal Arbitration Act] FAA respects the 'fundamental principle that arbitration is a matter of contract'"); *but see*, *Rent-A-Center v. Jackson* 130 S. Ct. 2772, 2776 (2010) citing *Buckeye v. Cardegna*, 546 U.S. 440, 443 (2006), ("Section 2 of the FAA places arbitration agreements on an equal footing with other contracts"). Thus, the reach of

arbitration into matters surrounding an on-going arbitration are limited by common law rights, remedies, and fundamental contract principles. *Id.*

By extension, where a party's arbitration contract rights have been so thoroughly repudiated as they have here, the party denied the benefit of the bargain should be allowed to declare the contract at an end and seek damages outside of the forum owned and controlled by the violators. *National Railroad, v. Expresstrak,* 330 F.3d 523, 528 (D.C. Cir 2003) citing *Green Tree  v. Randolph*, 531 U.S. 79, 87 at fn 2 ("FAA § 16(b), which ordinarily prevents appellate review of arbitration orders,... [is not] a bar to the court's exercise of pendent jurisdiction"). However, under the extreme conditions cited here, either *National Railroad* applies directly or it should be extended to judicial determination on a common law right to breach of contract claims in arbitration and mediation contracts.

For example, under 9 U.S.C. § 16 of the FAA, orders confirming an interim arbitration award are usually non-appealable but appealable under certain conditions. *National Railroad* supra 330 F.3d at 528 citing *Green Tree* supra. [5]

Here, Defendants urge this Court to dismiss Plaintiffs' complaint because the orders are non-appealable non-final order. But Plaintiffs' contend that the orders effectively end Plaintiffs'

---

[5] 9 USC § 16 – Appeals
(a) An appeal may be taken from—
(1) an order—
(A) refusing a stay of any action under section 3 of this title,
(B) denying a petition under section 4 of this title to order arbitration to proceed,
(C) denying an application under section 206 of this title to compel arbitration,
(D) confirming or denying confirmation of an award or partial award, or
(E) modifying, correcting, or vacating an award;
(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
(3) a final decision with respect to an arbitration that is subject to this title.
(b) Except as otherwise provided in section 1292 (b) of title 28, an appeal may not be taken from an interlocutory order—
(1) granting a stay of any action under section 3 of this title;
(2) directing arbitration to proceed under section 4 of this title;
(3) compelling arbitration under section 206 of this title; or
(4) refusing to enjoin an arbitration that is subject to this title.

contract rights and are either practically final or violations of contract that Plaintiffs have not agreed to arbitrate. *National Railroad,* 330 F.3d 523, 531 (remanding case for court determination of breach of contract claim and reversing order "compelling arbitration, affirming the interim arbitration award, and granting an injunction compelling continued performance.")

Arguably, the breach of arbitration and mediation contracts as described in this case, present the extreme examples that require judicial intervention and determination of repudiation. *National Railroad,* 330 F.3d 523, 529 (recognizing that interlocutory orders compelling arbitration are not ordinarily appealable under FAA § 16(b) but where appropriate "the court [may] exercise pendent jurisdiction to review the question of arbitrability." *See also id.* citing *Freeman v. Complex Computing*, 119 F.3d 1044, 1050 (2d Cir. 1997) ("Like the Second Circuit, we conclude that "although the FAA clearly manifests support for [arbitration]," there is no indication that Congress intended § 16 to interfere with the court's authority to exercise pendent jurisdiction.")

Plaintiffs appear entitled to the same judicial consideration afforded in *National Railroad*. *National Railroad,* 330 F.3d 523, 527 citing 13 Wright & Miller, Federal Practice and Procedure § 3523. ("A court exercises pendent jurisdiction when, while reviewing an order over which it has appellate jurisdiction, it entertains an appeal from another order that, although part of the same case or controversy, would not otherwise be within its jurisdiction"); *see also, id.,* citing *Swint v. Chambers County Comm'n,* 514 U.S. 35, 51 (1995) (No court should exercise pendent appellate jurisdiction frequently or liberally "but generally will invoke pendent jurisdiction in two circumstances: (1) 'when substantial considerations of fairness or efficiency demand it,' ... such as when a nonappealable order is 'inextricably intertwined' with an appealable order, ... or (2) when review of the former decision is 'necessary to ensure meaningful review of the latter.'")

Both justifications for exercising pendent jurisdiction exist in this case:

First, while Plaintiffs two motions for injunctive relief have been denied, "continued performance [by Plaintiffs in this arbitration under the conditions cited] are 'inextricably intertwined' with, and in fact, dependent upon this Court's determination whether the breach of contract Plaintiffs claim in this suit are arbitrable." *Id.,* (holding "because the arbitrability of the dispute is inextricably intertwined with other orders over which [the court has] jurisdiction, and because [the court] must finally resolve the arbitrability of the dispute in order to review those orders, [the court has] pendent appellate jurisdiction to resolve the issue of arbitrability." *Granite Rock,* 130 S. Ct. at 2855-2856 ("It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.' [citations omitted]  ... It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.")

Second, the unique facts in this case shows that Plaintiffs are not "parlaying ... collateral orders into multi-issue interlocutory appeal tickets"; Plaintiffs merely seek the rights guaranteed under the arbitration and mediation contracts; rights any litigant would expect but in this extreme case maliciously denied. Such decisions rest exclusively with the court and not the arbitrators. *See id.* at 2859 ("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.")

In determining whether matters in this case are matters the parties agreed to arbitrate, the court must discern the parties' intent. *See id.* at 2858 citing *First  Options*, 514 U.S. 938, 944 ("Our cases invoking the federal "policy favoring arbitration" of commercial and labor disputes ... recognize that except where 'the parties clearly and unmistakably provide otherwise,' [citation omitted] it is "the court's duty to interpret the agreement and to determine whether the parties

intended to arbitrate grievances concerning" a particular matter[.]" Plaintiffs contend that they certainly did not intend to arbitrate the extreme and egregious breaches alleged. Consequently, it is for this Court to decide whether the contract claims in this case are unimportant "interlocutory orders" subject to the ongoing arbitration or discreet matters that stand on their own merits for adjudication in this Court.

Because the entire FINRA organization has directly refused to allow Plaintiffs contract rights under its own FINRA rules, including an untainted Panel, and fundamental discovery, Plaintiffs contract rights and the contract have been destroyed leaving nothing available with which Plaintiffs could or should  participate in arbitration proceedings. Thus, these matters are inextricably intertwined with matters before this Court upon which this Court can impose pendent jurisdiction. *See National Railroad,* supra, citing 13 Wright & Miller and *Swint v. Chambers County,* 514 U.S. at 51 (court should exercise pendent jurisdiction in two circumstances: (1) 'when substantial considerations of fairness or efficiency demand it,' ... such as when a nonappealable order is 'inextricably intertwined' with an appealable order, ... *or* (2) when review of the former decision [*the nonappealable order*] is '*necessary to ensure meaningful review of the latter*.'")

With at least one day of hearings concluded in this district which were recorded by a court reporter, the jurisdiction of the Court sitting in this district has not only been established, sufficient reliable evidence exists for this Court to conduct a hearing and issue a ruling. *See Hall Street v. Mattel,* 552 U.S. 576, 582 fn 4 ("Title 9 U.S.C. § 10(a) provides the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration.")

Although the hearings were adjourned until April 2013, the evidence and orders demonstrate that Plaintiffs and this Court may "treat the contract as absolutely and finally broken." *See Hage,* 2008 U.S. Dist. LEXIS 104638 at **33-34 (D.N.J. 2008) (unpublished decision) citing *Mobley,* 295 U.S. 632, 639.

Ominously, the Panel has taken steps to make sure its predetermined award cannot be vacated or even considered in a motion to vacate by refusing to allow Plaintiffs use of a stenographic record as the official record of the proceedings, and refusing to write an explained decision. *Murray Popkave v. John Hancock Distributors*, 768 F. Supp. 2d 785, 793 (E.D. Pa. 2011)("When arbitrators do not state their reasons for an award, 'it is nearly impossible for the court to determine whether they acted in disregard of the law.'")

Under these extreme conditions, this court may impose pendent jurisdiction "when a nonappealable order is 'inextricably intertwined' with an appealable order, ... *or* (2) when review of the former decision [*the nonappealable order*] is '*necessary to ensure meaningful review of the latter*.'") *National Railroad,* citing 13 Wright & Miller, Federal Practice and Procedure § 3523 and *Swint,* 514 U.S. at 51. Therefore, Plaintiffs have sufficient grounds to support this court's jurisdiction at this time and deny FINRA and Pieroni's motion to dismiss Plaintiffs' complaint under FED. R. CIV. P. Rule 12(b)(6).

## 2.  PLAINTIFFS' ADDITIONAL RESPONSE TO PIERONI'S MOTION TO DISMISS UNDER 12(b)(6)

Plaintiffs incorporate by reference the foregoing with the following addition:

Defendants argue that Plaintiffs seek "interlocutory" relief because the arbitration proceedings are not yet complete. However, Plaintiffs' complaint against Mediator Pieroni is unarguably based on a completed mediation contract. *See* **EXHIBIT 2**, (Mediation Contract);

Pieroni breached that contract by willfully violating its terms and conditions as expressed in unambiguous rules pertaining to confidentiality and forbidding contact with an arbitration panel.

Compounding that breach, Pieroni actually advocated falsely to the Panel on behalf of FINRA Member CGMI, and submitted that false affidavit to a Panel Chairman with whom he shared an undisclosed relationship. *See* **EXHIBIT 3**, which includes Pieroni's affidavit (CGMI and Guariglia response to Claimants Motion to Bar).

Proof that Pieroni advocated falsely is the fact that no one in attendance can truthfully contest the fact that at the very commencement of the mediation CGMI proclaimed that CGMI would not mediate under any conditions and, that neither the Mediator, CGMI, Guariglia or Merrill Lynch can identify any offer or communication issued by CGMI to Plaintiffs. Nor can any party deny that CGMI's lawyer George Sullivan became verbally abusive towards Plaintiff and threatened Plaintiffs with litigation if arbitration was reconvened. *See* **EXHIBIT 1 – 8**.

Even if CGMI or Pieroni would dare deny the factual allegations in this Court, factual denials are not grounds to dismiss under 12(b). *See Glover,* 2012 U.S. App. LEXIS 18628 at **8-9 ("We must accept all well-pled allegations in the complaint as true and ask whether, under any reasonable interpretation, the plaintiff states a claim that would entitle her to relief.")

Consequently, Plaintiffs' claims against Mediator Pieroni are so related to claims in this case that the claims "form part of the same case or controversy" and therefore subject to this Court's supplemental jurisdiction under 28 USC § 1367:

> Supplemental jurisdiction ... [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Therefore, Mediator Pieroni's motion to dismiss should be denied.

### 3.      PLAINTIFFS' RESPONSE TO CGMI AND GUARIGLIA UNDER 12(b)(1)

Defendants CGMI and Guariglia move the Court to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) (lack of jurisdiction). *See* Dkt at 11, 10/9/12. Plaintiffs incorporate by reference the foregoing and add the following:

FINRA, the FINRA Arbitration Panel, CGMI, and Guariglia are necessarily knowledgeable of FINRA arbitration and mediation contract rules and the overriding securities laws by virtue of their membership requirements in FINRA. Such knowledge also includes the FINRA Discovery rules. *See* FINRA DISCOVERY GUIDE supra, "This Discovery Guide and Document Production Lists supplement the discovery rules contained in NASD Code of Arbitration Procedure for Customer Disputes ("NASD Customer Code.") (*See* Rules 12505-12511.)" Thus, the conduct in breach of the arbitration and mediation contracts is not mere negligent acts; it is deliberate and willful.

Like defendants FINRA and Pieroni, CGMI and Guariglia argue that Plaintiffs are seeking judicial review of conduct and interlocutory orders. However, the extreme conduct is not merely collateral to an arbitration dispute, nor are the orders interlocutory; the conduct and orders effectively terminated Plaintiffs' contract rights and ability to arbitrate. *See Hage,* supra (unpublished decision) citing *Mobley,* 295 U.S. 632, 639.

With virtual impunity, FINRA, the FINRA arbitrators, Mediator Pieroni, CGMI, and Guarigila have colluded to participate in the utter destruction of Plaintiffs' contract rights and ability to arbitrate with reprehensible conduct no court would tolerate. It is no less tolerable simply because it occurs under the rubric of "arbitration" or "mediation." *Id.* While misconduct in arbitrations have been routinely tolerated in order to support the national policy in favor of arbitration, and protected by the high standard necessary to vacate an arbitration award,

arbitrators, mediators, and the financial industry cannot be allowed to abuse innocents behind the closed doors of arbitration. *See National Railroad,* supra, citing 13 Wright & Miller, Federal Practice and Procedure § 3523 and *Swint,* 514 U.S. at 51 (court should exercise pendent jurisdiction (1) 'when substantial considerations of fairness or efficiency demand it,' ... such as when a nonappealable order is 'inextricably intertwined' with an appealable order, ... *or* (2) when review of the former decision [*the nonappealable order*] is '*necessary to ensure meaningful review of the latter*.'")

No officer of the court or advocate should tolerate such flagrant conduct and process so blatantly depriving a party of fundamental due process or contract rights. Worse, the extreme circumstances reported here are appalling by any measure, and intolerable in any forum. Inescapable is the reality that aged Plaintiffs, who shall be 80 years old when the arbitration hearings are reconvened in April 2013 and predictably decided thereafter, are forced to continue in an obviously corrupt process before evidently partial arbitrators or face default. At the end of this onerous process, these Plaintiffs shall be issued a predetermined adverse arbitration award subject to the impossible standard by which arbitration awards can possibly be vacated.

Believing FINRA member firms are virtually above the law in the FINRA arbitration forum, as they have been for decades, and therefore believing their collusion however perverse is free from judicial intervention, FINRA Member CGMI and the FINRA Mediator engaged in unconscionable conduct as described above. Predictably, FINRA did nothing and the Panel now has taken steps to be sure this Court shall not be made sufficiently aware of that abuse by refusing to allow Plaintiffs and official stenographic record of the proceedings and refusing to write an explained decision. Thus the gross conduct alleged is unlikely to receive proper judicial review unless this Court intervenes although CGMI's abject refusal to mediate, and its

procurement of a false affidavit from FINRA Mediator Pieroni, and Guariglia's refusal to produce any discovery at all, are all facts that can readily be proven at trial but only if this Court has jurisdiction.

Because Plaintiffs' complaint is not subject to heightened pleadings standards, the "short and plain statement" in Rule 8 pertaining to plausible claims for relief in order to survive a motion to dismiss" has been met. *Bell Atlantic Corp. v. Twombly*, , 550 U.S. at 556 n.3, and *Ashcroft v. Iqbal*, 556 U.S. at 679). Plaintiffs are therefore entitled to relief under existing law or an extension of the law under the cases cited.  Brief discovery would resolve any doubts to the contrary.

## 6.    CONCLUSION

For all of the above, Defendants' motions to dismiss should be denied.

Date: November 12, 2012

Respectfully submitted,
s/**Richard J. Gerace**
Richard J. Gerace
Attorney Id. No 92176
Gerace Law Office
Two Penn Center Plaza  Suite 200
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Ph. (215) 854-6345
Fax. (484) 472-8749
rgerace14@comcast.net
www.rgeracelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Richard J. Gerace, certify that on this date, I have served the foregoing on the following as indicated:

FINRA, and,                                          Citigroup Global Markets Inc., and,
Ferdinand Pieroni                                    Barry Guariglia
c/o Edward M. Posner, Esquire                        c/o Brian T. Feeney, Esquire
Drinker Biddle                                       Greenberg Traurig, LLP
One Logan Square, Ste. 2000                          2700 Two Commerce Square
Philadelphia, PA 19103-6996                          2001 Market Street
(215) 988-2716 *phone*                               Philadelphia, PA 19103
(215) 988-2757 *fax*                                 By USPS First Class Mail
By USPS First Class Mail                             By email: Feeneyb@gtlaw.com
By email Edward.Posner@dbr.com


                                                     Respectfully submitted,


Date: November 12, 2012                              **s/ Richard J. Gerace**
                                                     Richard J. Gerace
                                                     Attorney Id. No 92176
                                                     Gerace Law Office
                                                     Two Penn Center Plaza  Suite 200
                                                     1500 John F. Kennedy Boulevard
                                                     Philadelphia, PA 19102
                                                     Ph. (215) 854-6345
                                                     Fax. (484) 472-8749
                                                     rgerace14@comcast.net
                                                     www.rgeracelaw.com