**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUDITH GOLDMAN and KENNETH B. GOLDMAN Plaintiffs, | : | CIVIL ACTION |
| | : | No. 12-4469 |
| v. | : | |
| CITIGROUP GLOBAL MARKETS INC.; BARRY GUARIGLIA; FINRA; and FREDERICK PIERONI, Defendants. | : | |

**May _19, 2015** **Anita B. Brody, J.**

**MEMORANDUM**

Plaintiffs Judith and Kenneth Goldman move to vacate an arbitration award rendered by defendant Financial Industry Regulatory Authority ("FINRA") in favor of defendants Citigroup Global Markets, Inc. ("CGMI") and Barry Guariglia. CGMI and Guariglia move to dismiss for lack of subject matter jurisdiction. A district court has subject matter jurisdiction over a motion to vacate pursuant to the Federal Arbitration Act ("FAA") if the motion discloses a federal question on its face. *See Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 (9th Cir. 2004); *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1106-07 (7th Cir. 1996), *as amended* (Oct. 1, 1996). Because there is no subject matter jurisdiction, I will dismiss this case.

## I. BACKGROUND

In their motion to vacate the arbitration, Plaintiffs Judith and Kenneth Goldman allege that they began a financial advisory relationship with Defendant Barry Guariglia in the 1990s. *See* Refiled Mot. to Vacate ¶ 2 n.3, ECF No. 42. At the time, Guariglia worked for Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"). *Id.* In November 2008, Guariglia transferred from Merrill Lynch to CGMI. He convinced the Goldmans to transfer their accounts with him to CGMI. *See id.* ¶ 3 n.4 The Goldmans contend that this transfer allegedly triggered a "margin call" that liquidated their retirement savings. *See id*. They claim that Guariglia and CGMI knew or should have known that the transfer of the Goldmans' accounts would trigger a margin call, and knew or should have known that a margin call would harm the Goldmans' accounts. The Goldmans claim that CGMI and Guariglia had a duty to warn the Goldmans of these risks. *See id.* ¶¶ 3 n.4, 47-50.

In September 2010, the Goldmans brought an action before FINRA against CGMI, Guariglia, and Merrill Lynch.[1] *See* Arbitration Award at 1, ECF No. 42-2. They alleged violations of the federal securities laws, including Rule 10b-5, as well as breach of contract and a variety of other claims. *Id.* at 2. Before arbitration commenced, the Goldmans settled their claims against Merrill Lynch in mediation with FINRA before Frederick Pieroni.[2] *See id.* at 3; Refiled Mot. to Vacate ¶ 16. The claims against CGMI and Guariglia[3] proceeded to arbitration and a hearing. The arbitration panel ultimately dismissed all of the Goldmans' remaining claims.

---

[1] Morgan Stanley Smith Barney, LLC, William R. Meagher, and Carmela Nocerino were also defendants in the FINRA proceedings, but are not relevant to the instant action.

[2] Pieroni is also a defendant in the instant action.

[3] Claims against Guariglia relating to his actions before he left Merrill Lynch also settled. The claims that proceeded to arbitration were those concerning his time at CGMI. *See* Arbitration Award at 3, ECF No. 42-2.

*See* Arbitration Award at 4. As part of its determination, the panel found that no margin call took place. *See id*. at 5 (noting that "[the panel] remain[s] satisfied there was no margin call ordered").

On October 30, 2014, the Goldmans filed a motion in this Court to vacate FINRA's determination pursuant to the Federal Arbitration Act, 9 U.S.C. § 10.[4] The Goldmans contend that the arbitration process involved numerous procedural deficiencies in violation of FINRA rules. For example, they claim the arbitration panel allowed CGMI and Guariglia to harass the Goldmans by demanding discovery of irrelevant materials. They also allege that the arbitration panel denied the Goldmans access to important discovery materials from CGMI and Guariglia. Refiled Mot. to Vacate ¶¶ 11(a)-(c), 12-15. They also contend that mediator Pieroni allowed CGMI to attend mediation sessions even though CGMI refused to negotiate with the Goldmans. CGMI's presence during mediation allegedly breached FINRA's confidentiality requirements. *Id.* ¶¶ 16-24. As a result, CGMI allegedly had access to information that proved beneficial to its defense at the arbitration hearing. The Goldmans also allege that the panel chair had an undisclosed relationship with mediator Pieroni. The Goldmans claim that this relationship was a breach of FINRA ethics rules. *Id.* ¶¶ 25-28.

In addition to these procedural defects, the Goldmans argue that the panel erred in determining that no margin call occurred. *Id.* ¶¶ 3 n.4, 45-46. The Goldmans assert that, taken together, these errors show that their arbitrators were "blatantly partial" and acted with manifest disregard of federal law. *Id.* ¶ 11(d), 46(a). Defendants CGMI and Guariglia move to dismiss,

[4] Before the instant motion to vacate, the Goldmans filed several motions seeking interlocutory review of panel decisions while the arbitration process was still ongoing. *See* Mot. for TRO and Prelim. Inj., ECF No. 2; Second Mot. for TRO, ECF No. 6; Am. Mot. to Vacate, ECF No. 35. Each was denied. *See* Order Den. Mot. for TRO and Prelim. Inj., ECF No. 3; Order Den. Second Mot. for TRO, ECF No. 8; Order Den. Am. Mot. to Vacate and Mot. to Dismiss, ECF No. 41.

claiming that this Court has no jurisdiction to vacate the arbitration award. *See* Mot. to Dismiss, ECF No. 43.

## II. DISCUSSION

When determining jurisdiction over a motion to vacate an arbitration award, a district court must look to the allegations presented in the motion to vacate itself. *Luong*, 368 F.3d at 1111; *Minor*, 94 F.3d at 1106-07. In this action, subject matter jurisdiction only exists if the claims in the motion to vacate "aris[e] under the Constitution, laws, or treaties of the United States."[5] 28 U.S.C. § 1331. An action arises under the laws of the United States when "federal law creates the cause of action or [] the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983).

Federal law does not create the cause of action in this case. Despite being a federal law, the Federal Arbitration Act is "something of an anomaly" in that "it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 [] or otherwise." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). The FAA "does not supply federal jurisdiction where it does not otherwise exist." *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 915 (3d Cir. 1994).

Because the Goldmans have not brought a federal cause of action, they must prove that their right to relief necessarily depends on resolution of a substantial question of federal law. The Supreme Court has recently enumerated four factors to consider when determining whether an action presents a substantial question of federal law. A federal issue must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

[5] The parties are not diverse. *See* Order Den. Second Mot. for TRO at 1 (noting "both the Plaintiff and at least one defendant are New Jersey Citizens").

disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). The Supreme Court has emphasized that few cases satisfy these factors. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (noting only a "special and small" category of claims present substantial federal questions even though federal law creates no cause of action).

The Goldmans argue that this case presents a substantial federal question because: (1) their claims in the underlying arbitration were based on the federal securities laws, *see* Am. Resp. to Mot. to Dismiss at 4-5, ECF No. 46, (2) the arbitration panel allegedly acted in manifest disregard of the federal securities and banking laws, *see id.* at 8-19, and (3) the arbitration panel allegedly acted in violation of FINRA's internal rules, which are subject to extensive federal regulation. *See* Mot. to File Supplemental Authority ¶¶ 3-12, ECF No. 56. Each argument is insufficient to confer jurisdiction.[6]

**a. Presence of Federal Claims in an Underlying Arbitration Proceeding**

The Goldmans first argue that subject matter jurisdiction exists because their claims in the underlying arbitration were based on the federal securities laws. To determine subject matter jurisdiction, however, a district court must look to the motion to vacate itself.[7] *Luong*, 368 F.3d

---

[6] The Goldmans also assert that the venue statute, 28 U.S.C. § 1391, the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 81(a)(6)(B) each provide jurisdiction. *See* Am. Resp. to Mot. to Dismiss at 3-4, 5-8, ECF No. 46. None of these provide subject matter jurisdiction however. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 315 (2006) (noting "[v]enue is largely a matter of litigational convenience . . . [and] is waived if not timely raised," while "[s]ubject-matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases"); *United States v. Pa. Dep't of Envtl. Res.*, 923 F.2d 1071, 1079 (3d Cir. 1991) ("[T]he Declaratory Judgment Act does not confer subject matter jurisdiction . . . ."); *Glus v. G. C. Murphy Co.*, 562 F.2d 880, 886 (3d Cir. 1977) ("[T]he Federal Rules of Civil Procedure cannot be used to expand the subject matter jurisdiction of the district courts.").

[7] The Goldmans cite *Vaden v. Discover Bank*, where the Supreme Court held that "[a] federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law." 556 U.S. 49, 62 (2009). That case, however, concerned motions to compel arbitration governed by § 4 of the FAA. The case did not address motions to vacate, governed by § 10 of the FAA. Courts have repeatedly distinguished the two provisions. *See Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166

at 1111; *Minor*, 94 F.3d at 1106-07. Because §10 of the Federal Arbitration Act permits only limited review of arbitration awards, federal questions in an underlying arbitration generally are not implicated in a motion to vacate the arbitration award.

The Federal Arbitration Act governs vacating arbitration awards and permits only limited review. *See* 9 U.S.C. § 10(a). Section 10 of the FAA enumerates four narrow grounds that justify vacating an arbitration award. These grounds "relat[e] to a breakdown in the integrity of the arbitration process itself." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420 (6th Cir. 1995). They include when an award was procured by fraud, or where the arbitrators were evidently partial, corrupt, or exceeded their powers. *See* 9 U.S.C. § 10(a).[8] Notably, "§ 10 does not sanction judicial review of the merits of arbitration awards." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007).

Because § 10 does not authorize merits review, the substance of the underlying arbitration is generally irrelevant to a district court's consideration of a motion to vacate. The Goldmans may well have raised actually disputed and substantial federal issues in the underlying arbitration. Their motion to vacate, however, does not implicate those federal issues because §

---

F.3d 1243, 1247 (D.C. Cir. 1999) (justifying differing jurisdictional treatment of § 4 motions and § 10 motions because of the "exact wording of § 4" which does not appear in § 10); *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1107 (7th Cir. 1996) (justifying differing treatment in part because of the purposes underlying the FAA), *as amended* (Oct. 1, 1996); *Royal Bank Am. v. Kirkpatrick*, Nos. 11-1058, 11-1112, 2011 WL 4528349, at *3 n.5 (E.D. Pa. Sept. 30, 2011) (concluding that *Vaden* does not apply to § 10 motions).

[8] Specifically, a district court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

10 only permits a district court to review the arbitration process. "[T]he fact that the arbitration concerns issues of federal law does not, standing alone, confer subject matter jurisdiction on a federal district court to review the arbitral award." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 26 (2d Cir. 2000); *accord Luong*, 368 F.3d at 1111 ("Nor does § 10 create federal question jurisdiction even when the underlying arbitration involves a federal question." (citing *Greenberg*, 220 F.3d at 27)); *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1247 (D.C. Cir. 1999); *Coastal Gen.*, 27 F.3d at 915 (dismissing a motion to vacate arbitration award for lack of subject matter jurisdiction and noting that "[e]ven if it were permissible to look beyond the complaint to the substance of the arbitrated dispute" that jurisdiction would be lacking).

**b. Manifest Disregard of Federal Law**

Next, the Goldmans argue that subject matter jurisdiction exists because the arbitration panel acted in manifest disregard of federal law. Where recognized,[9] manifest disregard of federal law is an "unenumerated, judicially created ground for vacatur" of an arbitration award apart from those listed in § 10 of the FAA. *Royal Bank Am. v. Kirkpatrick*, Nos. 11-1058, 11-1112, 2011 WL 4528349, at *3 (E.D. Pa. Sept. 30, 2011). Unlike the grounds enumerated in § 10 of the FAA, manifest disregard of federal law permits a district court to conduct a limited review of the merits of the underlying dispute between the parties to the arbitration. *See Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d 68, 77 (1st Cir. 2008).

---

[9] Whether manifest disregard of federal law remains a recognized ground on which to vacate an arbitration award distinct from those enumerated in § 10 of the FAA is an open question. In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the Supreme Court held that § 10 of the FAA provides the "exclusive grounds" for vacating an arbitration award. 552 U.S. 576, 584 (2008). The Court suggested that manifest disregard of federal law was merely shorthand for some or all of the grounds justifying vacating an award already enumerated in § 10. *See id*. at 585. In a subsequent decision, the Court declined to decide whether manifest disregard survived as an independent ground for review after *Hall Street*. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010). The Third Circuit has not determined whether manifest disregard of the law remains valid after *Hall Street*. *See Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 176-77 (3d Cir. 2010).

Some courts have held that a motion to vacate that "complains principally and in good faith that [an] award was rendered in manifest disregard of federal law" presents a federal question. *Greenberg*, 220 F.3d at 27; *accord Luong*, 368 F.3d at 1112; *but see Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005) (noting "we are not certain that we agree with *Greenberg*"). Unlike a motion to vacate pursuant to § 10 of the FAA, which permits only review of the arbitration process, a motion to vacate alleging manifest disregard of the law permits a limited review of the merits of the underlying dispute. If the underlying dispute involved federal law, these courts argue that review for manifest disregard "so immerses the federal court in questions of federal law" that subject matter jurisdiction exists. *Greenberg*, 220 F.3d at 27.

"It does not appear that the Third Circuit has ruled as to whether a petition to vacate an arbitration award, which on its face alleges that the arbitrator manifestly disregarded federal law, may be heard in federal district court." *Louis J. Kennedy Trucking Co. v. Teamsters Local Union No. 701*, No. 05-6005, 2007 WL 2705161, at *6 (D.N.J. Sept. 17, 2007). Even if allegations of manifest disregard of federal law in a motion to vacate generally do create subject matter jurisdiction however, the Goldmans' motion to vacate does not create federal jurisdiction in this case. In their motion to vacate, the Goldmans argue that the arbitration panel manifestly disregarded FINRA rules, 15 U.S.C. § 78g and 12 C.F.R. § 220.12, which govern margin requirements, and Rule 10b-5, which prohibits securities fraud. *See* Am. Resp. to Mot. to Dismiss at 8-19.

The Goldmans' allegations that the panel manifestly disregarded FINRA rules do not constitute a valid claim for manifest disregard of federal law. The Goldmans claim that they were denied discovery by the arbitration panel. They also claim that the panel chair was

biased in part because of an undisclosed relationship with FINRA mediator Pieroni. Finally, they claim that CGMI had access to valuable information about the Goldmans' case through violations of FINRA confidentiality requirements. Even though the Goldmans claim that these allegations amount to manifest disregard of federal law, they are more appropriately viewed as issues in the arbitration process addressed by § 10 of the FAA. As discussed, these deficiencies in the arbitration process do not create subject matter jurisdiction. "[A]lleged misdeeds of the arbitrators, fraud, corruption, undue means, [and] evident partiality" do not "require resolution of a uniquely federal issue." *Greenberg*, 220 F.3d at 27 (citation omitted) (internal quotation marks omitted).

The Goldmans also claim that when rendering the arbitration award the arbitration panel manifestly disregarded the federal laws governing margin requirements and Rule 10b-5. However, the federal issues relating to these laws are not sufficiently central to their motion to vacate to create subject matter jurisdiction. "[M]ere incantation of a federal statute does not confer jurisdiction . . . ." *Minor*, 94 F.3d at 1105. The Supreme Court requires that a motion to vacate raise an actually disputed, substantial federal issue for a district court to exercise jurisdiction. *See Gunn*, 133 S. Ct. at 1065.

The Goldmans' motion to vacate does not meet the Supreme Court's standard because it does not raise actually disputed federal issues concerning the laws governing margin requirements and Rule 10b-5. Put simply, no party contests the existence, applicability, or construction of these statutes and regulations. Instead, the Goldmans argue that the panel erred in its factual determination that no margin call occurred. They attempt to prove their argument by citing record testimony from the underlying arbitration. *See* Am. Resp. to Mot. to Dismiss at 13, 18. The Goldmans claim that "the record shows there was a margin call." Refiled Mot. to

Vacate ¶ 46. However, "manifest disregard of the law does not encompass manifest disregard of the evidence." *Popkave v. John Hancock Distribs. LLC*, 768 F. Supp. 2d 785, 795 n.3 (E.D. Pa. 2011). An arbitrator's "failure to consider pertinent and material evidence" does not implicate uniquely federal issues. *Greenberg*, 220 F.3d at 27 (internal quotation marks omitted).

In conclusion, even if allegations of manifest disregard of federal law in a motion to vacate generally do create subject matter jurisdiction, the Goldmans' allegations do not create federal jurisdiction in this case.

**c. FINRA Rules**

Finally, the Goldmans argue that FINRA's internal rules are subject to heavy regulation by federal law and approval by the SEC. *See* Mot. to File Supplemental Authority ¶¶ 3-12. The Goldmans argue that the arbitration panel ran afoul of these internal rules. As a result, they argue that their motion implicates the federal regulation of FINRA, presenting a federal question.

The Goldmans rely on *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010 (2d Cir. 2014), to make this argument.[10] In *NASDAQ*, the Second Circuit found federal question jurisdiction over an arbitration dispute between UBS and NASDAQ relating to NASDAQ's alleged mismanagement of Facebook's initial public offering ("IPO"). *Id.* at 1035. The court found jurisdiction because resolving UBS' claims about whether NASDAQ complied with its internal rules while conducting the IPO implicated NASDAQ's duty to operate a "fair and orderly market," a duty imposed by federal law. *See id*. at 1021-23. NASDAQ's internal rules are also heavily regulated by federal law and subject to SEC approval. *Id.* at 1014-15.

The federal issues in Goldmans' motion to vacate regarding federal regulation of FINRA rules are not substantial enough to confer subject matter jurisdiction. *See Gunn*, 133 S. Ct. at

[10] *NASDAQ* involved the Second Circuit's review of district court's grant of a preliminary injunction to enjoin the parties from arbitrating. As a result, the case directly implicated neither § 4 nor § 10 of the FAA. *See NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1013 (2d Cir. 2014).

1065 (requiring a necessarily raised, actually disputed, and substantial federal issue to exercise subject matter jurisdiction). *NASDAQ* is distinguishable because it involved far more substantial questions of federal law. Crucial to the Second Circuit's exercise of jurisdiction was "the importance of [NASDAQ's] duty [to provide a fair and orderly market] to the overall system of federal securities regulation." *NASDAQ*, 770 F.3d at 1027. This case does not implicate the same systemic concerns about the organization and operation of financial markets.

## III. CONCLUSION

The Goldmans' motion fails to present a substantial federal question and thus does not arise under federal law. Therefore, I will grant CGMI and Guariglia's motion to dismiss for lack of subject matter jurisdiction.

s/Anita B. Brody

____________________________________

ANITA B. BRODY, J.

Copies **VIA ECF** on _________ to: Copies **MAILED** on _______ to: